[No. 26900-1-III. Division Three. April 16, 2009.]

The State of Washington, *Respondent*, v. Roger Hinshaw, *Petitioner*.

*David L. Donnan* and *Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*John D. Knodell, Prosecuting Attorney*, and *D. Angus Lee, Deputy*, for respondent.

---

---

¶1 Schultheis, C.J. — A warrantless entry inside a home is presumptively unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant. Here, Roger Hinshaw argues that the trial court erred in concluding that police demonstrated exigent circumstances justified their warrantless entry into his home. We agree and reverse.

## FACTS

¶2 On February 28, 2006, at 9:39 p.m., dispatch advised Moses Lake police officers of a person driving a car on a bike path. Shortly thereafter, an officer spoke with the person who reported the incident. She described the car and stated that she heard the car hit something on the bike path and a tire blow out.

¶3 At 9:57 p.m., an officer contacted Mr. Hinshaw, who was riding a bicycle close to the bike path. Mr. Hinshaw stated that he had been a passenger in the suspect car but had not been driving. Mr. Hinshaw was released from further questioning. Officers then searched the area for a car that matched the description given by the witness. At 10:31 p.m., officers found the car parked at Mr. Hinshaw's house with a flat front tire.

¶4 Officers knocked on the front door of Mr. Hinshaw's house. Mr. Hinshaw initially spoke with the officers through a closed door. Mr. Hinshaw then opened the door but left the screen door shut. Mr. Hinshaw was cooperative with officers. He confirmed his identity and admitted to drinking at a bar that evening. Officers could smell the odor of alcohol through the screen door.

¶5 Officers concluded that Mr. Hinshaw was intoxicated. Concerned that Mr. Hinshaw's blood-alcohol level was dissipating, Officer Ramon Lopez opened the screen door, reached inside Mr. Hinshaw's house, and grabbed Mr. Hinshaw's arm, advising him that he was under arrest. Mr. Hinshaw stepped back from the door and officers followed him inside his house. Officer Lopez never let go of Mr. Hinshaw's arm and followed him inside where he arrested him. Mr. Hinshaw refused to take a breath test.

¶6 The State charged Mr. Hinshaw with the misdemeanor offenses of driving while under the influence of intoxicants (DUI), first degree negligent driving, and hit and run. Before trial, Mr. Hinshaw moved to suppress evidence obtained as a result of the officers' warrantless entry into his home. The district court denied the motion, finding that DUI is a "grave offense" and the potential dissipation of blood-alcohol evidence permitted the officers to enter Mr. Hinshaw's home. Clerk's Papers (CP) at 29. Mr. Hinshaw was convicted by a jury of all charges.

¶7 The superior court affirmed the district court's ruling. It also found that DUI is a grave offense and the risk of losing blood-alcohol evidence was a sufficient exigency justifying the warrantless entry. This court granted Mr. Hinshaw's motion for discretionary review.

ANALYSIS

¶8 Mr. Hinshaw asserts that the lower courts erred in determining that exigent circumstances justified the officers' warrantless entry into his home. He does not dispute that the officers had probable cause to arrest him for his

charged crimes. Therefore, the issue we must decide is whether the police met their burden to prove that exigent circumstances excused their failure to obtain a warrant before entering Mr. Hinshaw's home.

¶9 We review findings of fact on a motion to suppress under the substantial evidence standard. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). In an order pertaining to suppression of evidence, we review conclusions of law de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996). Thus, whether exigent circumstances were present here is a legal question we review de novo.

¶10 Mr. Hinshaw first contends that the Washington Constitution imposes an absolute ban on warrantless home arrests for misdemeanors. To support his position, Mr. Hinshaw points to language in *State v. Hatchie*, 161 Wn.2d 390, 399, 166 P.3d 698 (2007) that provides, "but for [an arrest] warrant, police entry into a private home to make a misdemeanor arrest is per se invalid." Based on this language, Mr. Hinshaw asserts that *no* exigency justifies a warrantless home arrest for a misdemeanor.

¶11 Mr. Hinshaw's argument is not persuasive. Immediately after stating that a warrantless entry for a misdemeanor arrest is per se invalid, the *Hatchie* court noted that in such a situation the " 'presumption of unreasonableness is *difficult to rebut*, and the government *usually* should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.' " *Id.* (emphasis added) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984)). In view of this language, the court is simply stating that it is the rare situation where a warrantless home entry for a minor offense would be justified. We conclude that *Hatchie* does not stand for an absolute ban on such entries.

¶12 Next, Mr. Hinshaw argues that even if we reject his argument that the entry here was per se invalid under *Hatchie*, it cannot be justified under a Fourth Amendment analysis because police failed to establish that immediate action was required to deal with an emergency. To support his argument, he points to the lack of evidence pertaining to the length of the alleged delay in obtaining a warrant or the degree to which Mr. Hinshaw's blood-alcohol level would have changed during that undefined period of time. Accordingly, he assigns error to the trial court's findings that (1) the potential loss of blood-alcohol evidence justified the arrest and (2) the process of obtaining a warrant is not "instantaneous"—that "[s]ome time—under the circumstances, *precious* time in an evidentiary sense—would have been lost to the warrant process." CP at 321.

¶13 All warrantless entries of a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State v. Bessette*, 105 Wn. App. 793, 798, 21 P.3d 318 (2001). We have held that absent exigent circumstances, both the Fourth Amendment[1] and article I, section 7 of the Washington State Constitution[2] prohibit the warrantless entry into a person's home to make an arrest. *State v. Ramirez*, 49 Wn. App. 814, 818, 746 P.2d 344 (1987) (citing *Payton*, 445 U.S. at 587-88). "Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Dorman v. United States*, 140 U.S. App. D.C. 313, 317, 435 F.2d 385 (1970).

¶14 "Exigent circumstances" involve a true emergency, i.e., "an immediate major crisis," requiring swift action to prevent imminent danger to life, forestall the imminent escape of a suspect, or the destruction of evi-

---

[1] The Fourth Amendment provides in part, "The right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. CONST. amend. IV.

[2] Article I, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7.

dence. *Id.* at 319; *Michigan v. Tyler*, 436 U.S. 499, 509-10, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). "The idea underlying the exigent circumstances exception to the requirement of a search warrant is that police do not have adequate time to get a warrant." *Bessette*, 105 Wn. App. at 798. The police bear the heavy burden of showing that exigent circumstances necessitated immediate police action. *Johnson*, 128 Wn.2d at 447; *Welsh*, 466 U.S. at 749-50. They must show why it was impractical, or unsafe, to take the time to get a warrant. *State v. Wolters*, 133 Wn. App. 297, 303, 135 P.3d 562 (2006). "When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequence if he postponed action to get a warrant." *McDonald v. United States*, 335 U.S. 451, 460, 69 S. Ct. 191, 93 L. Ed. 153 (1948).

¶15 In evaluating exigency, we apply the following factors: (1) the gravity of the offense, particularly whether it is violent; (2) whether the suspect is reasonably believed to be armed; (3) whether police have reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; (6) the entry is made peacefully; (7) the police are in hot pursuit; (8) the suspect is fleeing; (9) the officers or public are in danger; (10) the suspect has access to a vehicle; and (11) there is a risk that the police will lose evidence. *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986). Not all factors must be met in order to find exigent circumstances; however, the circumstances must show that the officer needed to act quickly. *State v. Cardenas*, 146 Wn.2d 400, 408, 47 P.3d 127, 57 P.3d 1156 (2002).

¶16 Here, the State argues that the State established that DUI is a grave offense and that the potential destruction of blood-alcohol evidence justified the warrantless entry into Mr. Hinshaw's home. It also argues that "because DUI is always and necessarily accompanied by the exigent circumstance of destruction of evidence

(since blood-alcohol content is in a constant state of change), exigent circumstances may exist in every DUI case provided that DUI is a sufficiently grave offense." Br. of Resp't at 12.

¶17 We disagree. The police here presented no evidence of a major crisis demanding immediate entry into Mr. Hinshaw's home. The record shows that police had probable cause to believe Mr. Hinshaw had become intoxicated and had driven home, where he remained. The reckless operation of the car and consequent threat to public safety had ended. There was no suggestion that Mr. Hinshaw was armed or dangerous. He posed no threat, imminent or otherwise, to the safety of the officers or the public. His car was essentially disabled and police had last seen him on a bicycle. He was not fleeing or seeking to escape. Finally, the circumstances here did not involve violence or threats of violence. His offense had not harmed anyone; he had merely damaged property.

¶18 Furthermore, police failed to make any showing that destruction of evidence was imminent, or that the arresting officer could not have obtained a warrant before the alcohol dissipated. The evidence offered by the State consisted solely of Officer Lopez's testimony that "Mr. Hinshaw admitted that he was drinking at a local establishment . . . . I didn't want to lose the alcohol evidence." CP at 46. He offered no evidence about the length of time necessary to obtain a warrant or the time required to secure the evidence. In short, police made no showing that a delay of any length would have resulted in the imminent destruction of evidence. Without evidence of some real immediate and serious consequence resulting from a delay in obtaining a warrant, the State failed to carry its burden to prove exigency.

¶19 While no Washington case addresses our particular facts, a recent Oregon case supports our conclusion. In *State v. Kruse*, 220 Or. App. 38, 184 P.3d 1182 (2008), officers had probable cause to believe the defendant had committed a DUI and other alcohol-related offenses. When

officers went to the defendant's house, she refused to speak to them. Officers entered her home without a warrant. At the suppression hearing, an officer testified that he did not know the " 'exact time' " required to obtain a warrant but that it would have been " 'very lengthy.' " *Id*. at 41. The trial court found that the dissipation of alcohol constituted an exigent circumstance justifying the warrantless entry into a private home.

¶20 The Oregon Court of Appeals reversed the trial court, finding that "[t]he state failed to prove that a warrant, including a telephonic warrant, could not have been obtained within a reasonable time." *Id*. at 43. It ultimately held that "the potential destruction of evidence may justify a warrantless entry into a suspect's home *'if the state proves that the arresting officers could not have obtained a warrant before the alcohol in the suspect's body dissipated.'* " *Id*. at 42 (quoting *State v. Roberts*, 75 Or. App. 292, 296, 706 P.2d 564 (1985)).

¶21 This is precisely what the State failed to prove here—that a warrant could not be obtained before the evidence dissipated. Without evidence of any exigency justifying the warrantless entry, we need not address whether DUI is a grave offense. It is well settled that no exigency is created simply because there is probable cause to believe that a serious crime has been committed. *Welsh*, 466 U.S. at 753; *Payton*, 445 U.S. at 589 (requiring exigent circumstances for warrantless home entry in a murder case); *City of Seattle v. Altschuler*, 53 Wn. App. 317, 766 P.2d 518 (1989).

## CONCLUSION

¶22 The State failed to carry its burden to prove exigency. We hold that the warrantless entry into Mr. Hinshaw's home to arrest him was unreasonable under article I, section 7 of our constitution. Accordingly, the trial court erred in failing to suppress evidence obtained by virtue of the entry. We therefore reverse.

KULIK and KORSMO, JJ., concur.